## JOSIAH MASON ET AL.

### v.

## TRUSTEES OF SCHOOLS ET AL.

1. SALE IN FRAUD OF CREDITORS.—Although as between vendor and
vendee, a conveyance of land may be fraudulent as against creditors, it will
not affect the rights of a *bona fide* purchaser from the vendee, for value, and
without notice of the fraud.

2. NOTICE OF FRAUD.—Neither idle gossip nor vague reports in the
neighborhood will affect the purchaser's conscience, or put him upon inquiry.
Notice to affect the purchaser must be of such a character that a disregard
of it would be a fraud.

3. FRAUD—PROOF.—Fraud must generally be proven by showing such
circumstances as to justify the inference of a fraudulent intent or motive.
The facts proven must justify the inference.

APPEAL from the Circuit Court of Greene county; the Hon.
A. G. BURR, Judge, presiding. Opinion filed October 24,
1882.

Mr. GEO. W. HERDMAN and Messrs. BROWN, KIRBY & RUS-
SELL, for appellants; that fraud can not be presumed, but may
be inferred if the facts proved satisfy the jury that it existed,
cited Reed v. Noxon, 48 Ill. 323.

The price paid must be grossly inadequate to avail in proof
of fraud: Tyberandt v. Rauche, 96 Ill. 71.

Because of a fraud of his vendor, a conveyance will not be declared void as against an innocent purchaser: Willis v. Henderson, 4 Scam. 13; Prevo v. Walters, 4 Scam. 35.

The purchaser may presume the deed was honestly made unless some fact is brought to his knowledge to raise a suspicion of fraud: Frazer v. Western, 1 Barb. Ch. 220; Sparrow v. Chesley, 19 Me. 79; Gabler v. Boyd, 27 Pitts. Law Jour. 89; Bump on Fraudulent Conveyances, 485.

Mere idle gossip is not notice: Wade on Notice, 16; Pitman v. Sofley, 64 Ill. 155; Sugden on Vendors, 1040.

Where there is mere want of caution as distinguished from fraudulent or willful blindness, the doctrine of constructive notice will not apply: Jones v. Smith, 1 Hare, 43; Woodworth v. Paige, 5 Ohio St. 77; 1 Story on Eq. § 400.

An answer under oath must be disproved by testimony equal to two witnesses: Fish v. Stubbings, 65 Ill. 492; Stevenson v. Mathers, 67 Ill. 123; Walton v. Walton, 70 Ill. 142.

Mr. C. D. HODGES and Mr. J. W. ENGLISH, for appellees; as to what constitutes a fraudulent conveyance, cited Nesbit v. Digby, 13 Ill. 387; Merry v. Bostwick, 13 Ill. 398; Boles v. Henry, 32 Ill. 145; Moritz v. Hoffman, 35 Ill. 553; Monell v. Scherrick, 54 Ill. 269; Reed v. Noxon, 48 Ill. 323; Jaffers v. Aneals, 91 Ill. 487; Swift v. Lee, 65 Ill. 342; Tunison v. Chamblin, 88 Ill. 378; Stevens v. Dillman, 86 Ill. 233; Hatfield v. Merod, 82 Ill. 113; Phelps v. Curts, 80 Ill. 109; Poner v. Alston, 93 Ill. 587; Dunaway v. Robertson, 95 Ill. 419.

HIGBEE, J. This was a bill in chancery by appellees, who were judgment creditors of appellant Mason, to set aside two deeds as fraudulent and void as against them, to certain lands in Greene county: one made by Mason to Eliza Osborne, his daughter, February 4, 1879, and the other made by Eliza Osborne and William B. Osborne, her husband, on the 6th day of May of the same year.

The court decreed that said deeds were fraudulent and void as against complainants in the bill, who were found to be

judgment creditors, and subjected said lands to the payment of said judgments, from which decree the defendants below appeal to this court and assign several errors, the principal one argued being that the evidence does not sustain the decree.

. At the time Josiah Mason conveyed the lands in contro-versy to his daughter, Mrs. Osborne, he was in debt to the amount of about $7,000, an l the land conveyed was his farm, consisting of two hundred and forty acres, upon which he resided. He also owned one hundred and twenty acres of land worth $2,400, forty-seven acres worth $1,100, and per-sonal property, consisting of horses, cattle, farming utensils, wheat and corn, worth about $2,400. A portion of his in-debtedness was secured by mortgages on both his real and chattel property. His daughter, Mrs. Osborne, was twenty-nine years of age, and had kept house for her father, who was at the time a widower, for about seven years prior to October, 1878, when he married again. For these services she was to receive $1.50 per week, and her husband worked for her father at $20 per month. They remained there under this agree-ment until they rented and moved upon the 120 acres, where they resided until the purchase of the lands in controversy in the spring of 1879. ·

The consideration expressed in the deed was $7,000, but the real consideration as agreed upon at the time, was the pay-ment of a balance of $600 due to Mrs. Osborne on settlement for her services, a note of $1,000, held by Norman Harris secured by a mortgage on the premises, and an agreement by Mrs. Os-borne and her husband to build on the premises a house 10 by 32 feet, 10 feet high, with an L 12 by 16 feet, for the use of her father during his life, and keep and support him so long as he should live, and the three children until they mar-ried, and furnish him pasture for two horses and two cows. A few days after the deed was made, Eliza and her husband entered into a written agreement reciting the conveyance, and agreeing that they would pay Harris in consideration thereof, the $1,000, and all accruing interest thereon, build the house, support Josiah Mason and family, and furnish pasturage ac-cording to the terms of the verbal contract. Osborne and

wife took possession and moved onto the purchased prem-
ises.

The deed from Eliza and her husband on the 6th day of
May, 1879, to Rutherford M. Osborne, expressed a consid-
eration of $7,000. The grantors were anxious to move to
Kansas and wanted $3,000 and the balance coming to them
in a short time.    The purchaser assumed the $1,000 mort-
gage to Harris and interest thereon, gave his note at six
months on the day the deed was made, for $3,000, and agreed
to pay $3,000 down.    He paid, when the deed was delivered,
a small amount in cash, and gave credit for a store account of
from $40 to $60.    The next day he told his son and his wife
that he had heard there was something wrong about the convey-
ance from Mason to Mrs. Osborne.    They both said it was not
so, and he then asked them if there was not an agreement be-
tween them, which they admitted and produced.    It was then
agreed that the purchaser should build the house and furnish
the pasturage for $1,000, to be deducted from the $3,000 to be
paid down, and the balance of the $3,000 was paid within the
next thirty days.

If either of these conveyances was free from fraud the decree
can not stand.    Both Mrs. Osborne and her husband testify
that at the time the deed was made to her, they had no knowl-
edge that Mason was embarrassed or unable to pay his debts.
That they purchased without any design of hindering or de-
laying conditions and did not know that there were cred-
itors except Harris, whose demand they assumed to pay.
Mason corroborates this statement and no one controverts it.

But it is contended that this conveyance was fraudulent in
law.    Concede this to be so, as against creditors, and it would
not affect the rights of a subsequent purchaser from them with-
out notice of such a character that a disregard of it would
amount to a fraud upon the rights of Mason's creditors.

At the time Rutherford M. Osborne gave his note for
$3,000 to be paid in six months, paid a small amount of
money, promised to pay off the Harris debt, and to pay
$3,000 down; what notice did he have that Mason was insol-
vent or even embarrassed?    He swears that he had no knowl-

edge whatever of Mason's financial standing, and this is not contradicted by any witness in the case. But it is contended that he had learned, before he purchased, that Eliza had agreed to support her father in consideration of the conveyance, and that he saw the contract in writing to that effect the next day after he bought, and before he had made payment on any considerable part of the purchase money.

This does not even tend to charge him with fraud, unless he knew that Mason, when he deeded to his daughter, was in failing circumstances and that there were creditors who would be liable to be injuriously affected thereby.

The consideration was legal and sufficient to support the deed as between the parties to it, and the mere fact that the purchaser had notice of the true consideration did not make it his duty to inquire at his peril whether the title of Mrs. Osborne was not fraudulent. He had a right to rest upon the legal presumption that such a deed was honestly made, unless some other fact was brought to his knowledge to raise a suspicion in his mind that the conveyance was intended to defraud some one. Frazier v. Western et al., Barb. Chy. Vol. 1, 220; Sparrow v. Chesley, 19 Maine, 79; Gabler v. Boyd, 22 Pitts. Law J. 89; Bump on Fraudulent Conveyances, 485.

The rumor in the neighborhood that Mason was embarrassed was not brought home to Rutherford M. Osborne. He resided over three miles from Mason, was not on very friendly terms with him, had not seen him since the fall before he purchased in May, and most positively denies that he had heard anything against his credit, except that he was slow in paying his debts.

Neither the idle gossip of busybodies nor the vague reports in the neighborhood will affect the purchaser's conscience. Sugden on Vendors, 1040; Wade on the Law of Notice, p. 16.

These rumors were wholly insufficient to put the purchaser on inquiry. They were vague reports from persons not interested in the property and could not affect the purchaser's conscience. Notice in such cases should always be clearly proven, and should be of such character that a disregard of it would be a fraud. Clubb et al. v. Wise, 64 Ill. 157.

Fraud must generally be proven, when it exists, by showing such facts and circumstances as to justify the inference of a fraudulent intent or motive.   The facts proved must justify the inference.   It can not be presumed without proof, but may be presumed, if all the facts proven satisfy the mind of its existence.   Reed v. Noxon, 48 Ill. 323.

We have examined the proof in this case with great care, and while we deem it unnecessary to recite the whole of it here, we think it falls far short of justifying the decree in this case.

Decree reversed.